excuse my voice my name is Carol McHugh and I represent the appellant you okay mr. Haskins yeah my voice goes in and out I hope you could just say by the microphone so you picked up that would be great I'd like to reserve four minutes for rebuttal the the letter that issue in this case reads I cousin easel walked Nate for snitching on them too and in this line from an unsent letter obviously written to a friend Calif Alston accused Ernest Cannon his whom he referred to as his cousin of killing Nathaniel Giles and he did that for snitching on mr. Haskins co-defendant Kings whose nickname was Lennon this is a Brady case and it's been conceded by the Commonwealth that this letter which was written prior to any motive that anyone can think of for him to lie was in the possession of the Commonwealth at the same time that the prosecutor accused mr. Alston after his testimony of a recent fabrication of having fabricated this entire story for the express purpose of getting back at mr. Cannon who would accuse him of another murder but in order for us to even get to the point of how to consider that letter and the failure to produce it whether it's material don't we first have to figure out what our standard of review is at the Superior Court decision and doesn't that us first have to determine whether the Superior Court's articulation of Brady was contrary to the Supreme Court's precedent and you might can we start our conversation there you point to two statements in the Superior Court's opinion that you found particularly troubling and so I want to read one of the two and ask you how you think they're different so one of the statements you say that the Superior Court articulated was that it must be shown the violations quote so undermined the truth-determining process that no reasonable adjudication of guilt or innocence could have taken place that's the statement you point to and my question is how is this different from the Supreme Court's statement that the violation and the failure to turn over the letter must have quote so undermined the outcome of the trial they sound like they're saying the same thing undermine the truth-determining process that's a trial so it sounds the same to me how are they different I suppose I should have begun this argument your honor with the statement that I I'm conceding the contrary to clause okay then which is a short answer to your question which is I've been persuaded that that in fact the Superior Court's statement of the standards for for deciding this Brady claim were in fact the functional equivalent of what the Supreme Court has said okay then with that in mind we're at the deference land and we want to do all right then and now I understand why you started with the facts so with respect to at the deference you know that how deferential the federal court needs to be and whether there could be fair-minded disagreement about whether that letter that you've just read for us would have had an undermining the the confidence in the in the outcome of this explain why that could there couldn't be fair-minded disagreement that that letter could only have one consequence your honor there were two theories of this case the prosecution's theory which was put forth by two young women who the decedent and mr. Haskins my client who was supposedly standing nearby and according to one of the two children was shouting shoot him shoot him the other theory was the result of mr. Alston's testimony and mr. Alston testified that he was walking down the street with mr. Cannon and mr. Cannon left across the street and went and shot Nathaniel Giles because of his having snitched on mr. Okay that testimony was kind of viciously attacked as a recent fabrication it wasn't a recent fabrication the same claim had been stated in this letter which was written after mr. Alston learned that mr. Cannon had in fact accused him so I've asked myself a bunch of times your honor what motive would he have had to write such a letter well there's even a concession though on the flip side is what motive did the two eyewitnesses have to identify mr. King mr. Haskins as the assailant right that's true right the jury would have to decide between those two motivations wasn't though the letter let's assume that the recent fabrication let's assume that's what happened I guess then we have to think about what else was presented for the jury's consideration if we look at it that way and we know that mr. Alston's credibility was attacked in other ways because of his prior convictions his current arrests his affection and loyalty to mr. Haskins and mr. King so the jury heard that the jury also heard the two eyewitnesses the fact that they made identifications of the two individuals without a court and in court and they're just the description of the distance between the shooter and mr. Giles it's consistent with the medical examiner so taking all that together even assuming that that your letter were discussed was presented isn't it reasonable that the outcome was unaffected by the letter because we're in fair-minded fair-minded difference of opinion I think not your honor because the these statements of fact that the Superior Court relied upon are inaccurate they testifies of the two young women miss miss one of the things you mentioned is they identified and it's true that they identified eventually mr. King mr. Haskins the young woman FJ however until she was much later brought down for a second interview with her friend only described it a single assailant her friend in describing the shooting described one shot that made the which is just as much deviation from the medical examiners well one of the women as I understood when the teenagers said it was two shots she heard the other one heard me before five shots so they different from each other one is consistent with what the forensic show correct one is the inconsistency between what the two girls said at the first what they said its second interviews what they said at the trial and it really surprises me that this Superior Court can then say they found their testimony to be consistent on the main points when you've three pages of inconsistency is that an unreasonable finding a fact by the Superior Court well that that is my argument exactly your honor there were inconsistencies in the number of shots there were inconsistencies about who had a gun whether they had a gun there was inconsistencies in STs various statements and testimonies alone whether there was a gun whether she thought he was just reaching for a gun whether whether Haskins had a gun and handed it to King and and would the letter have I would imagine improved the the credibility of of Haskins have destroyed the credibility of well not that Haskins testified but would have destroyed that that was it Alston yeah would have destroyed his credibility because it it it removed the so-called motive for him to testify so when you consider lower credibility and the inconsistency of what the girls were saying all along I can see that an meet the requirements of EDPA is EDPA no sorry yeah in a funny word in in determining what we do with what was decided by the the state court exactly your honor just to return to my point about Mr. Alston the letter is addressed to Pop and it ends saying I love you dog with all my heart so he was he was writing to somebody that he cared about he wasn't writing to the police the police weren't involved yet nothing had arisen to make him dislike Mr. Cannon when we called his cousin in the same letter he talked about a crime that he himself had committed shooting a man in an eye in the eye and in one of the attachments to our PCRA we have the notes of testimony from Alston's own prosecution which resulted in a conviction for shooting somebody in the eye as a result of that letter in fact there was in that case a long testimony by Detective Dove who also testified in this matter in which he explained how he he combed the records for people who have been shot in the eye can I ask you this question cows one of the leading cases on materiality is cows versus Whitley okay and it talks about a reasonable probability of a different result right okay and a superior court held that they could not conclude that had the Commonwealth turned over the letter that there was a reasonable probability that the jury would have acquitted King and or Haskins why is that an unreasonable statement of the law as articulated by the US Supreme Court I think it's unreasonable that that's it what's that that's an unreasonable statement of the law because the factual underpinnings because what because the factual underpinnings of his of the Supreme Court's decision are just not accurate so are you are you strictly hanging your hat on the second prong of 2254 D and not the first no I think they could work together I think there have been there were certain matters that the car together they left in a car together things that were subject to many many conflicts in testimony there were also things that the Superior Court did not mention such as FJ's original set their separate prongs man right there's their separate prongs and my question is are you hanging are you arguing only the second prong no I'm not you're not then how do you and you're so your answer to I'm not sure I understand your answer to my question my my answer is that the weight of the inconsistencies on the side of the prosecution's case it was so that having this letter to butchers mr. Alston's testimony as a matter of law would I just want to make sure I know what we're talking about saying prong to prong prong one is contrary to you're not relying on that prong to is unreasonable application I think you've answered to judge I was relying on unreasonable application of that standard to these facts and if I understand your answer to judge Roth there was an unreasonable determination of facts which is wrong I understood judge Fisher to be referring to the unreasonable facts versus unreasonable determination language indeed to I was referring to to the part of 2254 D that said it resulting in a decision that was contrary to or involved an unreasonable application of clearly but I I still maintain that there was an unreasonable application of law to the facts as they are and that's prong three prong three has to do with many of the individual facts based on an unreasonable application of clearly based on unreasonable application of the facts in light of the evidence presented in the state court proceeding yes and I think I thought you were also arguing however there was an also an unreasonable determination of fact by reaching the conclusion the two women were consistent that's correct too I think there is an overall determination of fact and then there are questions of individual piecemeal determinations of fact and the individual piecemeal determinations okay we'll have you back up on rebuttal okay thank you good morning hey please the court my name is Catherine Kiefer and I represent the appellees in this case as we've discussed this is an epic case where the prosecutor erred by not providing counsel with a copy of Alston's letter the Commonwealth maintains that the letter is not material that is there's not a reasonable likelihood had the letter been disclosed the outcome of the trial would have been different here too young disinterested what outcome are we talking about I'm sorry what outcome are we talking about what's what's the difference and that that gets me to my that has to show that the the the letter would have resulted in an acquittal it needed to be a reasonable likelihood that the outcome of the trial would have been different would have been different doesn't have to be an acquittal correct okay now didn't the both the district court and the Superior Court of Pennsylvania use the words that the jury would have had to acquit King and or Hoskins I don't have a specific enough memory of what the Superior Court said I think that likely and my guess is it was just a shorthand oh I just read that said specifically Superior Court held that in reviewing the evidence totality we cannot conclude that had the Commonwealth turned a letter over to defense there's a reason probability that the jury would have acquitted King and or Hoskins isn't that different from a different result I mean one juror one juror in this case could have said you know what I believe Alston here that can and did it and I'm not voting for a guilty verdict and the jury could have been hung I agree I think that would be sufficient one juror would be sufficient to hang this jury one juror would be sufficient as I read this to maybe make this letter material theoretically you're correct I think one juror could have made a think probably the Superior Court was inarticulate when it said acquittal when a hung jury would have also qualified but I think on these facts the likelihood that there would have been a different outcome is quite minor these were two young children who had just seen a vicious murder they lived in the neighborhood and where the gang leader repeatedly and murderously demonstrated his loathing for snitches and frankly they probably wanted nothing more than to have zero to do with this to not have to say a word and yet they were brave enough to come forward and do so there were peripheral inconsistencies in their stories pages of inconsistencies there are quite significant inconsistencies like how many people were there how many guns shots went off who said what to whom it what they said to the police in the beginning what they said at trial you know it it what's not consistent I think on the core facts they are consistent they both saw these two men approach well who is standing one of them one of them saw only one man until finally at trial she said she was terrified she was afraid something was going to happen to her she was in her home with the lights off the curtains shut she didn't want to come downstairs she admitted that she was terrified and on that day hours after seeing this murder she said there was only one person when she came back to the police and admitted that she had not been truthful that day because of her overwhelming fear she identified both of them she identified King out of 97 pictures she identified Haskins she said she knew King from the neighborhood the only differences that remained at the time of trial are did the car drive down this street or that street did it park here or did it park there when they fled but but the inconsistencies are significant that occurred before trial as well as a trial testimony in determining how consistent and how credible the two girls were and when you are contrasting their testimony with that of Alston Alston's credibility is a very important factor in determining for the jury to determine what they're going to believe and Alston's very much affected by the charge that that he was testifying the way he did against Haskins because Haskins had accused him of doing something and if we could see the letter which was written prior to Haskins throwing Alston under the bus where the same position was held Alston's credibility would have been significantly weakened right I respectfully I would say that Alston's credibility would have remained poor after even if the letter had been properly handed over he demonstrated repeatedly his loyalty to these two men he said I'm going to do whatever I can to get them off to get to help them not be convicted of this crime he had his own repeated instances of crime and falsely convictions of lying about his name his social security number his birth date he was facing several additional murder attempted murder robbery conspiracy charges so I think it's entirely plausible that even had the letter been turned over earlier that he was perfectly happy to point his finger at Cannon another one of their subordinates in Lemon's gang and say you know what this guy's going to be going away for life on these five other charges just the way I might be we're both going to do our best for our superior for the guy who runs our gang and try to get him an acquittal so I think his I'm sorry his credibility was in particularly poor shape no matter what but I think judge I think it was judge Roth's point in part was this letter would have helped bolster this battered credibility and so could have been quite helpful because maybe he was not truthful or maybe he had this criminal record you're right in saying what I meant but that's that's what that's why this letter is so critical don't you think I think that this letter would have taken the wind out of the sails to one of the many arguments the prosecution was making about why Alston was incredible certainly the about the core one though though like who did it yeah wasn't it the main argument that they made about Alston's credibility I mean the key to Alston what Alston testified to was it wasn't King it was Cannon right I'm sorry maybe I misunderstood the question my point is that when the prosecutor put all of his emphasis on look Alston's only saying now that it was Cannon when in fact the letter demonstrated that he wasn't just saying it now my point is that the prosecutor had many modes of attack on Alston's credibility this was merely one of them that's the one they chose that's the one the prosecutor chose to emphasize he I would disagree with that assessment actually your honor he if I can just give you some quick facts in the closing argument for example it began on page 186 of that day's transcript which is 622 oh six and he discussed the identification of the girls their fear their lack of motivation to lie the motivation King and Haskins had the physical evidence that was consistent with the girls story as opposed to Alston's and he didn't mention Alston's motivation Alston all or cannon until page 221 and then spent only three pages discussing it and then he wrapped up on page 228 so if you have let's say a 40 page closing argument where only three or four of those pages are spent on this particular mode of this particular mode of discrediting Alston story I don't think it's fair to say that the letter made a large difference in in what or the letter played a large component of what the prosecutor was trying to do let's assume that the transcript when you read the cross-examination equally attacked his credibility for each one of the little buckets that the prosecutor had in their arsenal for attacking the credibility chart they're all equal but then there's the one piece that identified the shooter of mr. Giles a victim in this very trial wouldn't that one piece been very helpful to rehabilitate otherwise attacked credibility on a core on a core issue in the case and hence would have had have a reasonable likelihood of us that the outcome could have been different judge Fisher's point maybe a juror would have hung I don't think it would have I honestly think that Alston was standing up there as a guy who worked in lemons gang who committed vicious crimes regularly and I just think he was an unbelievable character from the get-go and my personal feeling and I think that this was demonstrated by the fact that the jury you know they went out for deliberations for less than six hours on two separate men from multiple crimes they came back very quickly I don't think there was a lot of question here I think Alston's just a bad guy who works in a bad gang who does a lot of bad things to a lot of people and they just weren't going to believe him no matter what how do you respond to your adversaries point that this letter she represents was used at Alston's trial to implicate him in the shooting described in the letter so for one matter the letter was embraced as being a truth-telling source and for this case it's something that we shouldn't pay any mind to well I think it was used differently in each and I think you're allowed to argue the evidence to the in fact it's the entire prosecutors role to argue the evidence to the best of your ability in the circumstances required by each individual case and that is what would explain sort of the discrepancy between the role the letter could play in two completely separate trials was there unreasonable fact-finding made I believe that there wasn't I think the district court pointed that out and I think specifically the district court found that defendant and co-defendant or that the Superior Court found that the defendant and co-defendant arrived by a car parked on Cambria Street fled in that car and that that set of facts was not necessarily borne out because of the inconsistencies similarly whether they fled on foot or whether they fled by the car was an inconsistency and that there was an inconsistency about I guess it's just the coming and going in the car and I think that that's rather immaterial to the core facts the girls presented repeatedly which was that they were standing in the store ordering their food they saw Alston and Giles outside they saw Haskins and King approach King then shot them both from a distance of no more than one to two feet for both shots there was gunpowder residue at both entry wounds showing that the gun was within one to two feet for both bullets not just the first and I think that the sort of peripheral facts that the girls got inconsistent demonstrates that you don't pay a lot of attention to cars that are driving by when you're just ordering food and those cars have no significance and then when you're literally running away for your life paying attention to whether the car is backing up or driving down Cambria also not something you're terribly concerned with but from your point of view that to the extent that the Superior Court was incorrect in some of its fact-finding it was incorrect on immaterial matters and therefore doesn't shouldn't influence our decision because it was not unreasonable in the fact findings that matter correct especially under a pie would say that the those distinctions are not going to be enough to determine whether the girls testimony was consistent we should look only at what they said in court and not consider what they said earlier no I think you can look at all of and I think it especially with the case of ST is helpful to look at the whole range because she identified defendant on the first day she identified that she spoke with the police she identified defendant on the second time she spoke with police she identified defendant at the preliminary hearing and she identified defendant at trial so I say go for it look at all of it because I think it only helps prove her consistency and in any event the jury was privy to all these prior consistent inconsistency they were both very heavily cross-examined on these inconsistencies in the jury who was tasked with found that these minor inconsistencies were not enough and they did so rather quickly I want to go back to my first point on the first prong of 2254 D mm-hmm is it okay for the Superior Court to misquote the US Supreme Court by quoting the Pennsylvania Supreme Court on what the standard is for determining an unreasonable application of clearly established federal law I'm not sure that they did but as the US Supreme Court has said in Woodford v. biscotti as long as the State Court gets the standard accurate once in its in its opinion the fact that it may have also misstated it slightly is of no moment and in fact we can tell where does he get it correct once so the Superior Court says about Brady on page 20 that there's a reasonable probability of a different result in terms of the material the standard on page 10 that they say the omission caused prejudice and the Supreme Court has held that Brady prejudice is similar to Strickland prejudice so the use of the word prejudice is perfectly appropriate there on page 14 the Superior Court said reasonable probability to the result of the trial would have been different they cited Kiles v. Whitley in US v. auger so in multiple instances the Superior Court echoed exactly the materiality standard put forth in Brady and the fact that they may have misstated it or used slightly inconsistent wording as pointed out by defense counsel the Supreme Court told us in Woodford that that really is of no moment so if I could just quickly conclude in order for this court to grant a new trial it would have to find a reasonable probability that the jury would have believed the uncorroborated testimony of a murderer thief and member of Lemon Squad who tried to conceal his identity to the police over that of two unbiased terrified young girls who consistently identified the defendants as the murderers this standard is raised even further under EDPA because the showing there must be a showing of the state court's unreasonable determination thank you very much I think that it's very important to realize that the inconsistencies were not merely the minor inconsistencies we have questions about who had guns we have questions about how many shots were filed we have questions about how many persons were there that the number of persons for FJ changed between her first statement on the day of the occurrence she may have been afraid but it was the day of the occurrence you would think her memory would be good she came down with ST and her mother to make her second statement and ST of course had identified two persons so there's questions there regarding her credibility I also would take issue counsel might might have the stating that he would do anything at all to help Mr. Haskins and Mr. King he he indicated that they were his friends and that he was loyal to them he also indicated that he was friends with Canon and loyal to him up until the time he did him dirty as as he said I think Judge Fisher's point is absolutely correct that only one juror would need to be swayed in this matter and and I have been a very bad man and he's committed murders and he's away for them and he lied to police when he was arrested and he gave false identifications and so forth but in this document that was suppressed he is not talking to anybody he would want to lie to. But he's also only talking about evidence that would have implicated King, the shooting. It doesn't really mention anybody else right this letter really only goes to King's role right? I'm not quite sure I understand. It says that Canon did the shooting and that's what King's role was so it only would exculpate King right? It would have helped King yes. If King wasn't there maybe Mr. Haskins wasn't there. I see. Just a question on the status of King in the briefing there was a I was just wondering is there anything going on in Mr. King's case? I understand there was a habeas petition filed in the district court. I believe it's still stayed but I don't know if you know counsel. The habeas petition is still stayed as far as I know there was a PCRA brought based on I believe on newly discovered evidence. Different not this letter? Not this letter. Okay thank you. And the case is I think still up on appeal on an interlocutory question having to do with whether or not the counsel for the prior counsel whose ineffectiveness was being alleged could be interviewed by the commonwealth. I think that's what's on appeal. Okay all right thank you both for your arguments and your briefing. We'll take this matter under advisement.